## Molony v. Belzer.

Louis M. Childs, 2nd, for plaintiff;  Thomas Hallman, for defendant.

KNIGHT, J., June 6, 1930.—

### Findings of fact.

1. The plaintiff, H. Martin Molony, is the owner of a certain tract of land in Lower Merion Township, this county, subdivided into 347 lots, and more particularly known as "Merion Park."

2. Merion Park is being developed by the plaintiff as a highly restricted residence neighborhood, and as a part of the general scheme of development, for the protection of purchasers and owners of lots in said development, certain covenants, conditions, reservations and restrictions were placed on said land in a deed of conveyance from H. Martin Molony and wife to Martin Stotz, dated March 10, 1925, and recorded in the office for the recording of deeds in and for Montgomery County, in Deed Book No. 945, page 158, &c.

3. The defendant purchased, and is the owner of, a lot and tract of ground, being a part of said development and known as premises No. 514 Lafayette Road, Merion Park, which said premises are more particularly described in a deed from H. Martin Molony and wife to John L. J. Belzer, dated Dec. 11, 1925, and recorded in the office for the recording of deeds in Deed Book No. 973, page 165.

4. The defendant holds title to his property, subject to certain restrictions and covenants contained by reference in his deed, among which are the following: Fourth. That the walls of all dwellings, including bay windows and overhangs hereafter erected on any of the herein mentioned lots of ground must set back at least thirty-five feet from the front building line, which shall be along the street upon which the lot of ground faces, and a distance of six feet from any adjoining party line, and that no porch shall be closer than twenty-five feet from the above mentioned building line except in the case of twin semi-detached one-family private dwellings the walls separating the twin dwellings shall be built on the party line. On all lots of ground situate at the intersection of two or more streets, the front building line shall be considered the one having the shorter dimension and the above set-back shall apply. Along the gable side or the building line having the longer dimension, all dwellings must set back at least fifteen feet from the gable building line and no porch shall be closer than twelve feet from the gable building line. Fifth. That the portion of the lots of ground left open by the set-backs described in section 4 shall at all times hereafter forever be left unbuilt upon, open and unobstructed except by open terrace, steps, trees, hedges and shrubbery, and at no time hereafter forever shall there be erected on any portion of the herein mentioned lots of ground any fences other than hedges. Twelfth. It is hereby further understood and agreed that the above mentioned restrictions shall at all times hereafter forever be enforced by the grantor, his heirs, executors or administrators and the Merion Park Civic Association.

5. There is erected on the defendant's lot a large and attractive suburban home, also a separate private garage. The house fronts on Lafayette Road and the garage is erected to the rear of the house and south thereof. Along the rear of this garage, and along the side away from Lafayette Road, the defendant has placed the construction complained of.

6. This construction consists of strong meshed wire, five feet or five and one-half feet high; it is supported by upright iron posts, on the top of which are ornamental knobs, iron piping connects the top of these posts, and to this piping there is attached the wire. The testimony does not disclose the dimensions of the fence, except the height, but from the photographs introduced into evidence we find that it is at least thirty-five feet in length. This wire construction and the side and rear garage walls form an enclosure at least ten feet wide at the front of the garage and running to a point in the rear. On the side of the enclosure where it adjoins the garage doors there is a wire gate corresponding in height, appearance and design with the rest of the construction.

7. The enclosure described in the foregoing finding is used by the defendant as a pen for his dogs.

8. The defendant has planted along the wire construction thirteen rose bushes of a climbing variety. These bushes are two years old, but they do not hide the construction or any considerable portion of it.

9. The construction described in the foregoing findings, in appearance, in design and in its general makeup, is identical with what is commonly called a meshed wire fence. Fences of this type, commonly called "cyclone fences," are often seen surrounding poultry yards, playgrounds and industrial plants.

10. When the wire material was delivered on the defendant's land, he was immediately notified by the plaintiff that no fence would be allowed to be erected.

11. Merion Park is being developed by the plaintiff as a high grade restricted residential neighborhood. At least thirty-eight houses have been built upon the subdivision.

12. The covenant not to build a fence on any part of the defendant's lot is of substantial benefit to the lots of the plaintiff.

## Discussion.

The plaintiff contends the structure in question is a fence and the defendant says it is a rose arbor. It looks like a fence, it is built like a fence, it is used as a fence, and we are constrained to say that it is a fence. If the defendant's contention is sound, it would nullify the restriction against fences, as all an owner would have to do would be to plant a few rose bushes, and, presto—the fence becomes a rose arbor. The location of the enclosure, in back of the garage; the use to which it is admittedly put, that of a dog run; the swinging gate; the design and construction of the substantial barrier, all stamp it as a fence and not a trellis for roses. This is so plainly and palpably a fence, as that term is commonly used and employed, that we deem it unnecessary to quote definitions of the word "fence," or cite cases in which the question of what is a fence, within the meaning of building restrictions, has been discussed.

The defendant has violated the covenant contained by reference in his deed, and we have but to consider if the plaintiff is entitled to equitable relief.

If the right a property owner seeks to enforce is not merely incident to the general public, but is contractual and based on an express covenant in a deed, equity will restrain the violation of the covenant so long as it remains of substantial value to the owner of the dominant estate: Landell v. Hamilton, 175 Pa. 327; Hunter v. Wood, 277 Pa. 150. We have found as a fact that the covenant prohibiting the erection of fences on any portion of the defendant's land is of substantial benefit to the plaintiff, owner of the dominant estate.

Merion Park is a new development, and the plaintiff in selling his land has given great prominence to the building restrictions and covenants designed to protect each lot, and to secure a quiet, peaceful, artistic and attractive residential community. Further, he has obligated himself in his deeds and public advertisements to see that the restrictions are enforced. To permit the defendant to openly violate his covenant not to build a fence on any portion of his lot would undoubtedly encourage other violations of the restrictions and render worthless the plaintiff's solemn promise to see that the building regulations and covenants are enforced. The effect would be to discourage buyers of the plaintiff's lots and to depreciate to some extent the value of the land, as well as the value of other lots sold by him in the development. In such a project as Merion Park, the high type of the development, and consequently the best value, can only be maintained by the rigid enforcement of the restrictions which protect each lot owner and insure the character of the subdivision as a whole.

In his bill the plaintiff asks for an allowance of counsel fees against the defendant. He bases his demand upon section 8 of the restrictions. As we construe this section, it does not empower us to require the defendant to pay the plaintiff's counsel fees.

From the foregoing findings of fact and discussion we draw the following

## Conclusions of law.

1. Equity has jurisdiction.
2. The fence erected by the defendant upon his lot constitutes a violation of the building restrictions contained by reference in the defendant's deed.

784

3. The plaintiff is entitled to a mandatory injunction, directed to the defendant, and requiring him to remove the fence mentioned in the bill and described in the findings of fact.

4. The defendant should pay the costs.

### Decree.

And now, June 6, 1930, after final hearing, it is ordered, adjudged and decreed that the prothonotary mark these findings of facts and conclusions of law filed, thereafter to become a part of the record of the case, and enter the following decree *nisi:*

And now, June 6, 1930, it is ordered, adjudged and decreed that a mandatory injunction issue, directed to the defendant and commanding him, within sixty days of this date, to remove the fence described in the bill and findings of fact, and that the defendant pay the costs.

The prothonotary is further ordered and directed to give counsel in the case notice as required by the rules of equity practice, that unless exceptions thereto are filed within ten days of this date, the decree entered *nisi* will become the final decree as of course.

From Aaron S. Swartz, Jr., Norristown, Pa.